1

2

**BEUS GILBERT PLLC**
ATTORNEYS AT LAW
4800 NORTH SCOTTSDALE ROAD
SUITE 6000
SCOTTSDALE, ARIZONA  85251-7642
TELEPHONE (480) 429-3000

3

4

5

Leo R. Beus/Ariz. Bar No. 002687 (*pro hac vice pending*) – lbeus@beusgilbert.com
Timothy J. Paris/Calif. Bar No. 90094- tparis@beusgilbert.com
Albert J. Morrison/Calif. Bar No. 198047 - amorrison@beusgilbert.com

6

7

Attorneys for Plaintiff

8

## UNITED STATES DISTRICT COURT

9

## DISTRICT OF NORTHERN CALIFORNIA

10

11

12

13

14

15

16

17

18

19

20

21

22

| | |
|---|---|
| Crown Paper Liquidating Trust, | Case No.  3:07-cv-02308-MMC |
| Plaintiff, | |
| v. | **FIRST AMENDED COMPLAINT** |
| American International Group, Inc. d/b/a AIG, a Delaware corporation; National Union Fire Insurance Company of Pittsburgh, Pa., a Pennsylvania corporation; AIG Domestic Claims, Inc. f/k/a AIG Technical Services Inc., a Delaware corporation; Marsh USA Risk & Insurance Services Inc. d/b/a Marsh USA Inc., a Delaware corporation; Marsh & McLennan Companies, Inc., a Delaware corporation; Does One through 50, | Date:        December 17, 2007<br>Judge:      Maxine M. Chesney<br>Dept.:      17C, Nineteenth Floor |
| Defendants. | |

23

24

25

1

::ODMA\PCDOCS\BGD\19847\13

I.      PARTIES.

    A.      Plaintiff.

    1.      Plaintiff Crown Paper Liquidating Trust is the liquidating trust formed pursuant to the Confirmed Plan of Reorganization (the "Plan") in the jointly administered Chapter 11 Case No. 00-41584N, currently pending in the United States Bankruptcy Court for the Northern District of California, Oakland Division.  Under the Plan, the Crown Paper Liquidating Trust is the successor in interest to Crown Vantage, Inc. and Crown Paper Company.  Crown Vantage was the publicly-traded holding company for Crown Paper Company.[1]

    2.      Jeffrey H. Beck (hereinafter "Beck" or the "Trustee") was appointed Trustee of the Crown Paper Liquidating Trust on May 8, 2002, and has authorized this action in such capacity.

    3.      The foregoing plaintiff and its predecessors-in-interest are referred to herein as "Plaintiff."

    B.      Defendants.

        1.      AIG/NUF/AIGTS

    4.      American International Group, Inc. ("AIG") is a Delaware corporation with its principal place of business in New York City, New York.  AIG issues insurance policies in all fifty States, including California, through a network of subsidiaries and affiliates.

---

[1] For ease of reference, this Complaint uses the term "Crown" referring collectively to the Crown Paper Liquidating Trust, Crown Paper Company and Crown Vantage, Inc.

FIRST AMENDED COMPLAINT
Case No.  3:07-cv-02308-MMC

::ODMA\PCDOCS\BGD\19847\13

5.      AIG is a consolidation of three "lead companies," one of which is National Union Fire Insurance Company of Pittsburgh, Pa. ("NUF").

6.      AIG is in the insurance business; yet AIG claims it does not issue any insurance policies.

7.      AIG's operations are conducted through its subsidiaries through four operating divisions: General Insurance, Life Insurance, Financial Services, and Retirement Services & Asset Management.

8.      AIG builds long-term relationships in markets around the world.  AIG markets insurance policies worldwide under the brand "AIG", such that insureds purchase "AIG" insurance, not the insurance of any of AIG's subsidiaries.

9.      AIG performs market risk analysis for each of its insurance segments.

10.      AIG manages all the invested assets of its General Insurance segment.

11.      AIG manages all of the General Insurance operations.

12.      AIG's General Insurance subsidiaries worldwide operate primarily by underwriting and accepting risk for their direct account and securing reinsurance on that portion of the risk in excess of the limit they wish to retain.

13.      AIG's General Insurance division is comprised of its Domestic General Insurance Group and its Foreign General Insurance Group.

14.      The General Insurance division accounted for 42.5% of AIG's revenue in 2003.

::ODMA\PCDOCS\BGD\19847\13

15.     AIG's primary Domestic General division is the Domestic Brokerage Group ("DBG").   DBG accounted for 57% of the General Insurance division's net premiums written in 2003.

16.     NUF is one of the primary divisions of AIG's DBG.

17.     NUF is a wholly-owned subsidiary of AIG and is a Pennsylvania corporation engaged in issuing insurance policies in all fifty states, including California.   Its principal place of business is New York City, New York.

18.     AIG's most dominant inter-company pool is its eleven-member commercial lines pool led by NUF.

19.     AIG owns 100% of NUF shares.

20.     Twelve of the thirteen directors on NUF's board of directors are AIG executive officers.

21.     AIG and NUF share the same corporate addresses:   175 Water Street, New York, NY  10038 and/or 70 Pine Street, New York, NY.

22.     AIG makes all new product development announcements for NUF and directs all inquiries to AIG's web page.  NUF does not have its own website.

23.     AIG files consolidated financial statements which include the financial results of its subsidiary NUF.

24.     At all times relevant to this First Amended Complaint, AIG acted as manager of NUF providing, *inter alia*, policy and claims administration services through its AIGTS subsidiary.  AIG decides which of its subsidiaries will underwrite particular risks.

FIRST AMENDED COMPLAINT
Case No.  3:07-cv-02308-MMC

::ODMA\PCDOCS\BGD\19847\13

25.     At all times relevant to this First Amended Complaint, AIG dominated and controlled NUF, including NUF's day-to-day operations.

26.     At all times relevant to this First Amended Complaint, NUF acted as an agent for AIG.

27.     At all times relevant to this First Amended Complaint, AIG exercised such control over NUF that NUF was only a means through which AIG acted in issuing coverage in the market segment serviced by NUF.  Though separately incorporated, in reality NUF was nothing more than a sub-department of AIG.

28.     At all times relevant to this First Amended Complaint, NUF performed functions that were complementary to and assisted AIG in pursuit of AIG's business.

29.     At all times relevant to this First Amended Complaint, NUF performed sufficiently important services for AIG such that if NUF did not perform such services, AIG would be required to perform them on its own.

30.     AIG Domestic Claims Inc. f/k/a AIG Technical Services, Inc. (hereinafter "AIGTS") is a Delaware corporation and subsidiary of AIG and is responsible for processing insurance claims on behalf of AIG and its issuing companies, including NUF.  AIGTS' principal place of business is New York City, New York, specifically 175 Water Street, New York, NY  10038, the same address as both AIG and NUF.

31.     At all times relevant to this Complaint, AIGTS acted as an agent for AIG and NUF providing, *inter alia*, claims administration services on behalf of AIG and its issuing companies, including NUF.  NUF performs claims administration services.  AIG and/or AIGTS decide which claims it will provide coverage for; NUF does not.

5

32.     Indeed, AIGTS represented to Plaintiff in a letter dated March 26, 2003, on AIG letterhead purportedly originating from AIG's offices at 175 Water Street, New York, NY, that "AIG Technical Services, Inc. has been retained by National Union Fire Insurance Company of Pittsburgh, PA. ('National Union') to handle" Plaintiff's claim at issue in this First Amended Complaint.  By this representation, Plaintiff understood that AIGTS was acting as an agent for and on behalf of NUF and AIG for all purposes related to Plaintiff's Claim.

33.     At all times relevant to this Complaint, AIG exercised such control over AIGTS that AIGTS was only a means through which AIG serviced claims on behalf of AIG's insurance companies.  AIGTS was nothing more than an incorporated department of AIG.

34.     At all times relevant to this Complaint, AIGTS performed functions that were complementary to and assisted AIG in pursuit of AIG's business.

35.     At all times relevant to this Complaint, AIGTS performed sufficiently important services for AIG such that if AIGTS did not perform such services, AIG would perform them on its own.

36.     Ted Borowiec ("Borowiec") was the Vice President for AIG Commercial and National Accounts, Corporate D & O Claims Department at all times relevant to this suit.

37.     Christopher P. Tirro ("Tirro") was the Complex Claim Director for AIG's Corporate Directors and Officers' Liability Unit at all times relevant to this suit.

38.     John D. Alberti ("Alberti") was a Complex Claim Director for AIGTS at all times relevant to this suit.

::ODMA\PCDOCS\BGD\19847\13

1     39.    Richard F. Dziedziula ("Dziedziula") was a Complex Claim Director for

2    AIGTS at all times relevant to this suit.

3     40.    Tim Delaney ("Delaney") was an employee of AIG responsible for "binding"

4    policies at all times relevant to this suit.

5                    **2.    Marsh & McClennan/Marsh USA**

6     41.    Marsh & McLennan Companies, Inc. d/b/a MMC (hereinafter "MMC"), a

7    Delaware corporation with its principle place of business in New York City, New York, is

8    engaged in, *inter alia*, insurance brokering and risk consulting through a host of subsidiaries.

9     42.    Marsh USA Risk and Insurance Services, Inc. ("Marsh USA"), a Delaware

10   corporation, is a subsidiary of MMC, with its principle place of business in New York City,

11   New York.

12
13    43.    MMC and Marsh USA, collectively with their subsidiary and affiliated

14   companies and employees and agents of them or their subsidiary and affiliated companies,

15   are referred to hereinafter as "Marsh."

16    44.    Richard E. Cowan (hereinafter "Cowan") served as Vice President of Marsh

17   during all times relevant to this suit.

18
19    45.    Mike Klaschka (hereinafter "Klaschka") was an officer of Marsh during all

20   times relevant to this suit.

21    46.    Tim Smith (hereinafter "Smith") was an employee of Marsh responsible for

22   filing claims on behalf of Marsh's clients at times relevant to this suit.

23
24
25

FIRST AMENDED COMPLAINT
Case No.  3:07-cv-02308-MMC

::ODMA\PCDOCS\BGD\19847\13

47.     Rebecca Feldman was an employee of Marsh and, upon information and belief, was responsible for ensuring that policies, including Plaintiff's, were issued to Marsh clients at times relevant to this suit.

48.     Erica Sweetman ("Sweetman") was an employee of Marsh and, upon information and belief, was responsible for ensuring the proper handling of claims, including Plaintiff's.

## II.    JURISDICTION.

49.     This action was initially filed in California Superior Court in and for the County of San Francisco.  Defendants AIG, AIGTS, and NUF removed this action pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1441(b).  Damages exceed two million dollars.

## III.   VENUE.

50.     Venue is properly with the Court pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1446.

## IV.    GENERAL FACTUAL ALLEGATIONS.

51.     All preceding allegations are hereby incorporated as if set forth herein.

### A.    Defendants Assumed Contractual and Fiduciary Duties to Plaintiff.

#### 1.    AIG and NUF Had a Contractual Duty to Insure Crown and Crown's Trustees.

52.     Plaintiff has a contractual relationship with AIG and NUF.

53.     AIG and NUF issued policy no. 859-37-91, in consideration for a $50,000 premium paid, together with several endorsements (the policy and applicable endorsements are referred to collectively hereinafter as the "Fiduciary Policy"), to Crown for the period August 22, 1999 to August 22, 2000 (hereinafter the "Policy Period").

8

::ODMA\PCDOCS\BGD\19847\13

54.     The Fiduciary Policy is captioned "American International Companies" across the top of the face-page and page one.  There are only two references to NUF in the entire Fiduciary Policy.  The first reference is contained on the face-page where NUF is listed as one of eight potential AIG companies to be used by AIG to underwrite the Fiduciary Policy.  The second reference is contained on the follow-up page to the face-page where NUF is typed into the section labeled "Item 7 Name and Address of Insurer ('Insurer')."  These two pages are Marsh-related documents used in connection with their brokerage services.  The actual Fiduciary Policy makes no reference to NUF, nor does it refer to NUF by name.  In fact, the top of each page of the Fiduciary Policy is captioned "American International Companies".  Crown was not involved in deciding which subsidiary of AIG would issue its policy.

55.     Based on the above, Crown believed and intended it was purchasing an "AIG policy" of insurance, a policy issued and underwritten by AIG.

56.     AIG and NUF agreed to issue all endorsements paid for by Crown.

57.     The Policy was a renewal of policy no. 486-82-81.

58.     AIG and NUF agreed under the Fiduciary Policy to cover claims made against Crown and the trustees and fiduciaries of Crown's pension plans (hereinafter the "Insureds") during the Policy Period, for wrongful acts committed during the Policy Period or during a certain time prior to the Policy Period.

59.     On or about August 2000 and in consideration for an additional premium of $15,334, AIG and NUF agreed to extend the Policy Period to December 1, 2000.

FIRST AMENDED COMPLAINT
Case No.  3:07-cv-02308-MMC

::ODMA\PCDOCS\BGD\19847\13

60.     On or about November 2000 and in consideration for an additional premium of $13,545, AIG and NUF agreed to extend the Policy Period to March 1, 2001.

61.     On or about February 2001 and in consideration for an additional premium of $18,336, AIG and NUF agreed to extend the Policy Period to July 1, 2001.

62.     On or about August 2001 and in consideration for an additional premium of $45,100, AIG and NUF agreed to again extend the Policy Period to March 15, 2002.

63.     On or about August 2001 and in consideration for an additional premium of $75,000, AIG and NUF agreed to provide "runoff" or "tail" coverage under the Fiduciary Policy, whereby AIG and NUF agreed to cover the Insureds for claims made between March 15, 2002, and March 15, 2008, for wrongful acts committed prior to March 15, 2002.

64.     AIG and NUF are required under the Fiduciary Policy to pay for the combined costs of any judgment or settlement plus costs of defense, up to a limit of $25 million, for claims arising during the Policy Period.

65.     At all times relevant to this Complaint, the members of Crown's Board of Directors (collectively hereinafter the "Directors") served as trustees and fiduciaries of Crown's pension plans.

66.     The policy includes, in its definition of "Insured", "any other person or entity in his, her or its capacity as a Fiduciary, Administrator or Trustee of a Plan . . .."

67.     The Directors were therefore Insured Persons under the Policy.

10

::ODMA\PCDOCS\BGD\19847\13

2. **Marsh Had a Fiduciary Relationship with Plaintiff and Assumed Fiduciary Duties Toward Plaintiff.**

68.     Marsh held a position of superior knowledge and expertise of the insurance business with respect to Crown.

69.     Crown paid Marsh money in return for Marsh's advice.  For example, in 1999 and 2000, Crown paid Marsh $36,000 per month, in addition to premiums, as administrative fees for Marsh's securing and maintaining and advising Crown with respect to Crown's insurance coverage.

70.     Plaintiff trusted Marsh and relied on Marsh's advice.

71.     Marsh knew that Plaintiff trusted Marsh and relied on Marsh's advice.

72.     Marsh received premium payments from Crown and forwarded the payments to AIG and NUF on Crown's behalf.

73.     Plaintiff reposed trust and confidence in Marsh by seeking and receiving Marsh's advice and counsel regarding policies and appropriate coverages and by accepting and acting on advice provided by Marsh.

74.     Marsh assumed the fiduciary duty to advise and inform Plaintiff of any matters affecting plaintiff's coverage under the Fiduciary Policy, including any failure on the part of Marsh to carry out its fiduciary duties to Crown.

75.     Marsh frequently advised Plaintiff on insurance matters including whether to purchase coverage, what coverages to purchase, the effects of purchasing certain coverages, and whether and when to file claims under Plaintiff's policies.

11

::ODMA\PCDOCS\BGD\19847\13

1

76.     For example, with respect to a potential environmental claim against Crown's

2   directors and officers, potentially covered by Crown's Directors and Officers Liability

3   Policy, Cowan, on behalf of Marsh, advised Crown in 2001 as follows:

4
5
6
7
8
9

> Unless the dispute you mentioned has resulted in a "Claim"
> against Directors and Officers, you do not have to put D&O
> underwriters [AIG] on notice at this time; rather, you can wait
> until a claim is actually made, if ever.  However there is no
> downside to putting underwriters on notice at this time, if you
> think a claim might be made in the future.  The point I want to
> emphasize is to put underwriters on notice of a claim before
> defense costs are incurred, in order to ensure that all defense
> costs can apply to exhaust the policy's retention (*i.e.*, deductible)
> and that additional defense costs are reimbursable.

10

77.     Cowan further advised Plaintiff regarding signing a settlement agreement as

11   follows:  "Getting back to the question that Marianne [Kormann, an employee of Crown]

12   asked in her e-mail, *i.e.*, will signing the settlement inpact [sic] your D&O coverage, I think

13   the answer is 'no'."

14

15

78.     On August 17, 2001, Cowan, on behalf of Marsh, advised Plaintiff to extend or

16   renew the Fiduciary Policy:  "You may want to consider some new coverage for any future

17   acts you may take with respect to pension plans."

18

79.     Further, with respect to the "tail" coverage on the Policy, Cowan, on behalf of

19   Marsh, advised, "This coverage allows you to report to <u>AIG</u> any claims made during the next

20   6 years against plan fiduciaries alleging ERISA violations or negligence in handling pension

21   or other benefit plans." (emphasis added).  Cowan made no reference to reporting Crown's

22   claim to NUF.

23

24

25

FIRST AMENDED COMPLAINT
Case No.  3:07-cv-02308-MMC

::ODMA\PCDOCS\BGD\19847\13

80.     Marianne Kormann, a Crown employee, copied Cowan and Smith on an e-mail to Crown's in-house counsel, Evan Davis, and Crown's Chief Restructuring Officer, Jay Awarder, dated February 12, 2001, discussing the purchase of the "tail" coverage for the Policy, among other insurance issues.

81.     This e-mail included the following:  "Fiduciary Policy:  Rick [Cowan] believes we should look at purchasing a tail, and also coverage for the estate trustee and others."

82.     Marsh agreed to provide copies of the Fiduciary Policy to Crown.

83.     Marsh assumed fiduciary duties towards Crown by agreeing, among other things, to forward Crown's notices of claim to AIG and by, through its course of conduct, forwarding numerous claims on behalf of Crown.

84.     In a letter to R. Neil Stuart, Crown's then-Executive Vice President and Chief Financial Officer (hereinafter "Stuart"), dated December 24, 1999, regarding the renewal of the Policy, Cowan, on behalf of Marsh, stated, "We are prepared to file those reports [of claims] on your behalf."

85.     This duty was confirmed by the parties' course of dealing.

86.     For example, on March 10, 2001, Marsh accepted and filed with AIG notice of seven claims under Crown's Employment Practice Liability Policy (policy no. QB332199).

87.     In knowingly acting as an advisor and encouraging Plaintiff to repose trust and confidence in Marsh, Marsh assumed fiduciary duties and responsibilities toward Plaintiff.

13

1

### 3. Marsh Assumed Contractual Duties Toward Plaintiff.

2

88.     Plaintiff agreed to purchase policies, including the Fiduciary Policy, through

3

Marsh.  Plaintiff contracted, in writing, with Marsh, to provide services related to insurance

4

coverages.

5

### (a) Marsh Agreed to Accept Notices of Claim.

6

89.     Crown paid Marsh additional money in return for Marsh's advice.   For

7

example, in 1999 and 2000, Crown paid Marsh $36,000 per month, in addition to premiums,

8

as fees for Marsh's securing, maintaining, and advising Crown with respect to Crown's

9

insurance coverage.

10

90.     In consideration for these payments and for Plaintiff's purchasing policies

11

through Marsh, Marsh agreed in writing to, among other things, accept and file claims under

12

Plaintiff's insurance policies purchased through Marsh.

13

91.     In a letter to R. Neil Stuart, Crown's then-Executive Vice President and Chief

14

Financial Officer, dated December 24, 1999, regarding the renewal of the Policy, Cowan, on

15

behalf of Marsh, stated, "We are prepared to file those reports [of claims] on your behalf."

16

92.     This written agreement between Plaintiff and Marsh is confirmed by the

17

parties' course of dealing.

18

93.     For example, on March 10, 2001, Marsh accepted and filed with AIG notice of

19

20

seven claims under Crown's Employment Practice Liability Policy (policy no. QB332199).

21

### (b) Marsh Agreed to Ensure that the Necessary Endorsements to Plaintiff's Policies Were in Place.

22

94.     In consideration for Plaintiff's purchasing policies through Marsh and the

23

24

additional consideration described in paragraph 69, above, Marsh also agreed to, undertook

25

14

::ODMA\PCDOCS\BGD\19847\13

to, and did review Plaintiff's coverages to ensure that all necessary endorsements and other details were in place to ensure that all coverages Plaintiff had purchased were in effect and enforceable.

95.     For example, in a letter to Stuart of Crown, dated July 3, 2000, Cowan, on behalf of Marsh, stated,

> Enclosed for you [sic] records are several endorsements to Crown Vantage's D&O policy from NUF.
>
> #14 and 15:  These are enhancements to coverage that were negotiated in 1998 and confirmed by NUF, but [NUF] did not issue the appropriate policy endorsements.  I discovered that oversight in my review of the file after joining the Crown Vantage service team last year, and I asked NUF to finally issue the endorsements.

### (c)     Marsh Withheld Policy Information from Plaintiff.

96.     Marsh agreed to provide Crown with copies of its policies and other policy information necessary to pursue and enforce its rights against AIG.

97.     This information included providing copies of the Fiduciary Policy, the Fiduciary endorsements, notice of claim forms, and correspondence between and among Marsh, AIG, NUF, and AIGTS.  This correspondence would have included the May 22, 2002 letter showing that AIG, NUF, and AIGTS were in possession of Crown's March 15, 2002 letter by no later than May 22, 2002.

98.     The Liquidating Trust was the successor-in-interest to and, indeed, stood in the shoes of Crown and thus held all rights Crown had under the policy.

99.     Marsh was fully aware that the Trustee was the successor in interest to Crown.

Marsh was required to provide Crown, as the Insured, with information regarding which officers and directors had sought coverage under Crown's policies.

### B.   A Claim Arose During the Policy Period.

100.   The Policy defines a "Claim" as "a civil or criminal proceeding for monetary or injunctive relief which is commenced by … service of a complaint or similar pleading."

101.   PACE International Union filed a complaint (hereinafter the "Complaint") on November 15, 2001, against the Directors of Crown claiming they breached their fiduciary duties as Trustees of certain pension plans and seeking injunctive relief and damages.

102.   Thus, upon the subsequent service of the Complaint on Crown, a Claim arose during the Policy Period.  For convenience, this Claim is referred to hereinafter as the "Claim".

### C.   Defendants Breached Their Duties to Plaintiff.

#### 1.   AIG and NUF Failed to Issue a Necessary Endorsement to the Policy.

103.   Although Crown had paid AIG and NUF the necessary premium in August 2001, as of November 15, 2001, AIG and NUF had not issued the one-paragraph endorsement necessary to extend the Policy Period to March 15, 2002, even though AIG and NUF were contractually bound to do so.

104.   Despite numerous requests by Plaintiff and Plaintiff's counsel, AIG and NUF still had not issued the endorsement as of March 28, 2002.

105.   In an e-mail message dated March 28, 2002, Cowan called AIG and NUF's delay in issuing the one-paragraph endorsement "embarrassing."

16

106.    In an e-mail message dated March 28, 2002, Delaney apologized on behalf of AIG and NUF for AIG and NUF's "gross delay" in issuing the one-paragraph endorsement.

107.    AIG and NUF have not yet issued the necessary endorsement.

108.    AIG and NUF are therefore estopped from asserting that Plaintiff's notice of the Claim was not timely.

**2.      Marsh Failed to Deliver a Copy of the Policy to Plaintiff.**

109.    Prior to March 15, 2002, Plaintiff made repeated requests to Marsh to provide Plaintiff with a copy of the Fiduciary Policy, as Marsh had promised it would.

110.    Plaintiff advised Marsh that it needed a copy of the Fiduciary Policy in order to file a claim.

111.    Plaintiff advised Marsh that it needed a "Notice of Claim" form in order to file a claim.

112.    Plaintiff advised Marsh that it needed a policy number in order to file a claim.

113.    Marsh failed to provide Plaintiff with a copy of the Fiduciary Policy as of March 15, 2002.

114.    Marsh failed to provide Plaintiff with a Notice of Claim form as of March 15, 2002.

115.    Marsh failed to provide Plaintiff with Plaintiff's Fiduciary Policy number as of March 15, 2002.

116.    Marsh is therefore estopped from asserting that Plaintiff's notice of the Claim was not timely.

17

FIRST AMENDED COMPLAINT
Case No.  3:07-cv-02308-MMC

::ODMA\PCDOCS\BGD\19847\13

3.    **Plaintiff Filed Its Notice of Claim on March 15, 2002.**

117.    Although AIG and NUF still had not issued the one-paragraph endorsement and Marsh had failed to provide Plaintiff with the endorsement, a copy of the Fiduciary Policy, a Notice of Claim Form, or even a policy number, counsel for Plaintiff filed a notice of claim for the PACE litigation with Marsh in a letter to Smith and Klaschka dated March 15, 2002 (hereinafter the "Notice Letter").

118.    Marsh was aware, based on conversations with then-counsel for Plaintiff that a written notice of the Claim would be received via fax from Plaintiff on March 15, 2002.

119.    Marsh agreed to file the Claim on Plaintiff's behalf, as it had agreed to file all of Crown's claims with the Insurers in a timely fashion.

120.    Plaintiff relied on Marsh to file its Claim.

121.    Counsel for Plaintiff faxed the Notice Letter to Smith and Klaschka at Marsh on March 15, 2002.

122.    Counsel for Plaintiff also sent copies of the Notice Letter to Smith and Klaschka that same day, via United States Certified Mail.

123.    The Notice Letter not only provided Marsh with notice of the Claim but also provided Marsh with notice of a separate claim under Plaintiff's Directors and Officers policy for a lawsuit initiated by Plaintiff against Plaintiff's pre-bankruptcy officers and directors (hereinafter the "Liquidating Trust Lawsuit")

FIRST AMENDED COMPLAINT
Case No.  3:07-cv-02308-MMC

::ODMA\PCDOCS\BGD\19847\13

1

2

        4.     **AIG and NUF Received Timely Notice of Plaintiff's Claim Through Their Agent Marsh.**

124.    AIG and NUF, through receipt of Plaintiff's Notice of Claim by AIG and NUF's agent Marsh, received notice of Plaintiff's Claim on March 15, 2002.

125.    Marsh held itself out as AIG and NUF's agent by, *inter alia*, accepting warranty letters from Plaintiff on AIG and NUF's behalf.

126.    Marsh held itself out as AIG and NUF's agent by, *inter alia*, billing Plaintiff on AIG and NUF's behalf.

127.    Marsh held itself out as AIG and NUF's agent by, *inter alia*, accepting policy premiums from Plaintiff on AIG and NUF's behalf.

128.    Marsh held itself out as AIG and NUF's agent by, *inter alia*, accepting notices of claim from Plaintiff on AIG and NUF's behalf.

129.    Marsh held itself out as AIG and NUF's agent by, *inter alia*, delivering AIG and NUF policies and endorsements to Plaintiff.

130.    AIG and NUF knew that Marsh held itself out as AIG and NUF's agent and permitted Marsh to so act.

        5.     **AIG and NUF Denied Plaintiff's Claim in Bad Faith and Breached Their Contract with Plaintiff.**

131.    In a letter dated March 26, 2003, from Alberti at AIGTS on behalf of AIG and NUF to Sweetman at Marsh (the "March 26, 2003 Letter"), AIG and NUF denied Plaintiff's claim by concluding that "there is no coverage for the Pace [sic] lawsuit".

132.    In the March 26, 2003 Letter AIG, NUF and AIGTS <u>did not mention</u> Crown's Notice Letter to Marsh dated March 15, 2002.  Therefore, Crown had no notice that Marsh

**FIRST AMENDED COMPLAINT**
Case No.  3:07-cv-02308-MMC

::ODMA\PCDOCS\BGD\19847\13

had failed in its duty to promptly submit the Notice Letter to AIG on March 15, 2002, as Marsh had obligated itself to do.  Crown naturally assumed that AIG was mistaken regarding timely receipt of the March 15, 2002 Notice Letter.

133.    Based on its fiduciary relationship with Marsh and the duties that flowed from that relationship, Crown relied on Marsh to advise Crown on all issues related to coverage.

134.    Marsh remained silent as to the fact of AIG, NUF and AIGTS' misrepresentation that Notice was first received on October 8, 2002.

135.    On April 29, 2003 (the "April 29, 2003 Letter"), Richard Thomas of Beus Gilbert PLLC, Plaintiff's then-current counsel in this matter, wrote Alberti at AIGTS disputing Alberti's factual assertions contained in the March 26, 2003 Letter and AIG, NUF, and AIGTS' position regarding coverage.

136.    On June 4, 2003 (the "June 4, 2003 Letter"), Alberti responded indicating denial of the coverage and stating "[t]his letter will serve as NUF's coverage position under the policy."  In this June 4, 2003 letter, AIG, NUF, and AIGTS mentioned for the first time the March 15, 2002 Notice letter and that they had not timely received the Notice Letter on March 15, 2002.  Thus, this was the first time – June 4, 2003 – that Crown realized that Marsh had not timely submitted the March 15, 2002 Notice Letter to AIG, in breach of Marsh's contractual and fiduciary duties.  The June 4, 2003 Letter thus represents the earliest date on which any claims Crown had against Marsh for breach of contractual and/or fiduciary duties could have accrued.

::ODMA\PCDOCS\BGD\19847\13

137.   Crown had no basis to discover the misrepresentations, nor could Crown have reasonably known whether or not AIG, NUF, and AIGTS were unaware of the March 15, 2002 Notice Letter.

138.   AIG, NUF, and AIGTS knowingly and intentionally misstated numerous facts and proffered faulty legal grounds in their March 26, 2003 Letter and their June 4, 2003 Letter.

139.   AIG, NUF, and AIGTS intended that Plaintiff rely on these misrepresentations.

140.   Plaintiff did rely on those representations, and such reliance was reasonable.

**(a)   AIG, NUF, and AIGTS Knowingly and Intentionally Misrepresented the Date They Received Notice of the Claim.**

141.   In the March 26, 2003 Letter, AIG, NUF, and AIGTS asserted that the Claim was "first reported to National Union on or around October 8, 2002."

142.   On October 8, 2002, Marsh sent a letter, via overnight delivery, to Larry Fine of AIG/NUF, enclosing a copy of the PACE complaint (hereinafter the October 8, 2002 Letter).

143.   The October 8, 2002 Letter incorrectly stated, in reference to the enclosed PACE complaint, "Submission of this complaint shall constitute a first notice of claim under the above-referenced policy [the Fiduciary Policy]."

144.   Marsh's assertion that "submission of this complaint shall constitute a first notice of claim under the above-referenced policy [the Fiduciary Policy]" was false, and Marsh knew it was false because it had received Crown's March 15, 2002 letter.

::ODMA\PCDOCS\BGD\19847\13

145.   AIG, NUF and AIGTS' assertion that the "Claim was first reported to NUF on or around October 8, 2002" was likewise intentionally false.

146.   As detailed above in Paragraphs 117 through 123 herein, the Claim was reported to AIG and NUF's agent Marsh on March 15, 2002 via the Notice Letter.

147.   As detailed in Paragraph 123 herein, the Notice Letter also provided notice of a claim for coverage arising from the Liquidating Trust Lawsuit.

148.   On May 22, 2002, Marsh sent a letter to AIG/NUF purporting to give notice of the claim for the Liquidating Trust Lawsuit.

149.   Marsh's May 22, 2002, letter also enclosed a copy of the Notice Letter of March 15, 2002, describing the PACE litigation.

150.   Therefore, AIG <u>knew</u> it had received the Notice Letter no later than May 22, 2002, yet represented to Crown that it had not received Notice until October 8, 2002.

151.   In addition, in a letter dated May 31, 2002, Ted Borowiec of AIG/NUF acknowledged receiving the Notice Letter on May 23, 2002.

152.   Further, in a letter dated May 8, 2003, Richard Dziedziula of AIGTS repeated the acknowledgement of AIG's receipt of the Notice Letter on May 31, 2002.

153.   Indeed, in Dziedziula's May 8, 2003 letter, AIG agreed to defend Crown's officers and directors against the Liquidating Trust Lawsuit, even though the policy period under the D&O Policy was the same as the Policy Period under the Fiduciary Policy and notice was given under both policies via the very same Notice Letter.

22

::ODMA\PCDOCS\BGD\19847\13

154.   AIG, NUF, and AIGTS knew that they had received notice of the Claim no later than May 22, 2002, yet intentionally misrepresented this fact in their March 26, 2003 Letter in an effort to avoid their contractual obligations under the Policy.

155.   AIG, NUF, and AIGTS intended that Crown rely on AIG's intentional misrepresentations of the date that AIG/NUF first received notice of Crown's claims under the policy.

156.   The correspondence outlined in paragraphs 148 through 153 above was unknown to Crown and not made available to Crown until early 2006 when AIG/NUF provided those documents in response to Crown's subpoena.

### (b)   Crown Relied on AIG's, NUF's, and AIGTS' Misrepresentations.

157.   Crown relied on AIG, NUF and AIGTS' misrepresentations.

158.   Believing that AIG, NUF, and AIGTS were, as stated above, simply mistaken about the receipt of Crown's Notice Letter, counsel for Crown sent the April 29, 2003 letter to AIG advising them that notice had been provided to AIG, NUF, and AIGTS through Marsh, its agent, on March 15, 2002.  Given that AIG, NUF, and AIGTS' March 26, 2003 Letter made no reference to Crown's March 15, 2002 Letter to Marsh, Crown reasonably assumed that AIG, NUF and AIGTS was mistaken. However, Crown had no grounds to suspect that AIG, NUF and AIGTS knew they were in timely receipt of the March 15, 2002 Letter. Nor was Crown aware that Marsh had failed to forward the Notice Letter to AIG/NUF on the date of receipt, March 15, 2002.  Because Marsh remained silent and again failed to advise Crown that Marsh failed to forward Crown's Notice Letter on March 15,

2002, Crown had no grounds to suspect that AIG's March 26, 2003 Letter contained intentional material misrepresentations.

159.   Because Crown was unaware that the March 26, 2003 Letter contained intentional misrepresentations giving rise to causes of action against AIG, NUF, AIGTS and Marsh, Crown did not pursue legal action.  Instead, Crown accepted AIG/NUF's invitation to provide additional information on which AIG/NUF might reconsider its position regarding denial of coverage.

160.   AIG, NUF, and AIGTS' intentional misrepresentation and concealment of material facts coupled with Crown's reasonable reliance on those representations results in AIG, NUF, and AIGTS being estopped from asserting a statute of limitations defense.

161.   The applicable statutes of limitations were tolled during the time period between March 26, 2003, when AIG, NUF, and AIGTS fraudulently concealed the fact that AIG and NUF received Crown's Notice Letter no later than May 22, 2002 and falsely represented that notice was first received on October 8, 2002, through to June 4, 2003 when Crown was first advised that it had not received the Notice Letter on March 15, 2002, and that notice to Marsh was not also notice to AIG.  The statute of limitations is also tolled because Crown sought an alternate remedy, namely reconsideration, using AIG and NUF's own internal claims-review process.

162.   In addition, by receiving the Notice Letter and agreeing to defend the Liquidating Trust Lawsuit while not explicitly denying coverage on the PACE litigation, AIG/NUF waived any purported right to deny coverage on the PACE litigation.

::ODMA\PCDOCS\BGD\19847\13

1

2

        **(c)**    **AIG, NUF, and AIGTS Relied on a Nonexistent Requirement to Provide Notice During the Policy Period.**

3

163.    In the March 26, 2003 Letter, AIG avers, "[S]ince the Pace [sic] Lawsuit is

4

reported outside of the applicable Policy Period and after the expiration of the Policy Period,

5

we regretfully must deny coverage for this matter pursuant to the Insuring Agreements

6

section of the policy."

7

164.    In fact, the Fiduciary Policy contains no provision requiring notice within the

8

Policy Period.

9

165.    AIG, NUF, and AIGTS' intentional misrepresentation and concealment of

10

material facts coupled with Crown's reasonable reliance on those representations results in

11

AIG, NUF, and AIGTS being estopped from asserting a statute of limitations defense.

12

166.    The applicable statute of limitations was tolled during the time period between

13

March 26, 2003 when AIG, NUF, and AIGTS fraudulently concealed the fact that AIG and

14

NUF received Crown's Notice Letter no later than May 22, 2002 and falsely represented that

15

notice was first received on October 8, 2002, through to June 4, 2003 when Crown was first

16

advised that it had not received the Notice Letter on March 15, 2002 and that notice to Marsh

17

was not also notice to AIG and NUF.  The statute of limitations is also tolled because Crown

18

sought an alternate remedy, namely reconsideration using AIG and NUF's own internal

19

claims-review process.

20

21

22

23

24

25

::ODMA\PCDOCS\BGD\19847\13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

### 6.   **Marsh Breached Its Contractual Duties to Crown.**

#### (a)   **Marsh Failed to File Crown's Notice of Claim on March 15, 2002.**

167.   Marsh knew that time was of the essence.  Marsh agreed in writing to timely file Crown's claims with AIG/NUF, as described in paragraphs 88 and 93, above.

168.   Marsh received timely written notice of Plaintiff's Claim on March 15, 2002, as alleged above.

169.   Prior to Marsh's receipt of Crown's Notice Letter on March 15, 2002, Marsh had been advised that Crown would be sending its Notice Letter on March 15, 2002.

170.   Plaintiff's written notice specifically instructed Marsh to "do whatever it takes *today* to assist us in making sure that these claims are properly and timely notified to the insurance company and that notice is received *today*" (emphasis added).

171.   Marsh breached its contract with Crown by failing to notify AIG and NUF of Crown's claims on March 15, 2002.  Crown did not learn of Marsh's breach until June 4, 2003, as described above.

#### (b)   **Marsh Failed to Ensure that Crown's Endorsements Were in Place.**

172.   In consideration for Plaintiff's purchasing policies through Marsh and the additional consideration described in paragraph 89, above, Marsh also agreed to, undertook to, and did review Plaintiff's coverages to ensure that all necessary endorsements and other details were in place to ensure that all coverages Plaintiff had purchased were in effect and enforceable.

::ODMA\PCDOCS\BGD\19847\13

173.   For example, in a letter to Stuart of Crown, dated July 3, 2000, Cowan, on behalf of Marsh, stated,

> Enclosed for you [sic] records are several endorsements to Crown Vantage's D&O policy from NUF.
>
> #14 and 15:  These are enhancements to coverage that were negotiated in 1998 and confirmed by NUF, but [NUF] did not issue the appropriate policy endorsements.  I discovered that oversight in my review of the file after joining the Crown Vantage service team last year, and I asked NUF to finally issue the endorsements.

**(c)   Marsh Withheld Policy Information from Plaintiff.**

174.   Crown was denied access to a copy of the Policy and other information necessary to pursue and enforce its rights against AIG.

175.   The information denied to Crown by Marsh included the Policy, the Policy endorsements, the notice of claim forms, and correspondence between and among Marsh, AIG, NUF, and AIGTS, which included the May 22, 2002 letter showing that AIG, NUF, and AIGTS were in possession of Crown's March 15, 2002 letter by no later than May 22, 2002.

176.   The Liquidating Trust was the successor-in-interest to and, indeed, stood in the shoes of Crown and thus held all rights Crown had under the policy.

177.   Marsh was fully aware that the Trustee was the successor in interest to Crown.

178.   Nevertheless, Marsh wrongfully required Crown's discharged officers and directors to authorize any release of information to the Trustee.

179.   As of August 2003, despite repeated requests for information by the Trustee and his counsel, Marsh refused to provide the policy information requested by the Trustee.

27

180.   In an e-mail dated August 26, 2003, Cowan, on behalf of Marsh, wrote the following to the Trustee:  "Given our duties to each of the insureds under the policy, we believe it would be prudent for you to notify each of the insureds of any request for information regarding the policy.  If there is no objection we can then produce the requested information."

181.   Marsh's delay and refusal to release policy information to Plaintiff hindered and frustrated Plaintiff's efforts to pursue and enforce its rights against AIG, NUF and AIGTS and represented a further breach of the contractual and fiduciary duties it owed Crown.

        **(d)**    **<u>Crown Relied on Marsh's Misrepresentations and Concealments in Deciding Not to Pursue Litigation Within Four Years of March 26, 2003.</u>**

182.   Marsh received a copy of AIG's March 26, 2003 Letter.  Knowing that the factual representations contained in the March 26, 2003 letter regarding the date on which AIG first received notice of Crown's claim were false, Marsh nonetheless chose to remain silent about its receipt of and failure to forward Crown's March 15, 2002 Notice Letter.

183.   Marsh knew the representations were false because Marsh, AIG and NUF's agent, received notice of Crown's claim on March 15, 2002.

184.   As Crown's fiduciary, Marsh was duty-bound to immediately advise Crown that Marsh had failed to forward Crown's March 15, 2002 notice to AIG.

185.   Marsh failed to immediately notify Crown that Marsh failed to forward Crown's notice letter on March 15, 2002.

28

::ODMA\PCDOCS\BGD\19847\13

186.   Crown was <u>unaware</u>, when it received the March 26, 2003 Letter, that Marsh had breached its contractual and fiduciary duties to Crown by failing to forward the March 15, 2002 Notice Letter to AIG.  Nowhere does the March 26, 2003 letter mention the March 15, 2002 Notice Letter.  Crown had every reason to assume AIG was simply mistaken, or unaware of, Marsh's receipt and forwarding of Crown's March 15, 2002 Notice Letter.

187.   Crown was justified in relying on the representations and/or omissions of its fiduciary Marsh.  Crown's reliance was reasonable.

188.   Marsh intentionally concealed its breach from Crown by remaining silent. Marsh's silence thus confirmed Crown's belief that AIG was simply mistaken about the date AIG first received notice.

189.   Crown was also unaware that the actions of AIG, NUF, AIGTS, and Marsh were part of a concerted effort to deny Crown its rights under the Policy.

190.   Unaware that legal action was then warranted based on Marsh's breach, and relying on Marsh's silence regarding its breach, Crown did not institute legal proceedings. Instead, Crown reasonably advised AIG, NUF and AIGTS on April 29, 2003 that notice had actually been provided to AIG, NUF and through Marsh on March 15, 2002.

**7.     Marsh Breached Its Fiduciary Duties to Crown.**

        **(a)     Marsh Failed to Forward Crown's March 15, 2002 Notice of Claim.**

191.   Marsh breached its fiduciary duties to Crown when it failed to forward on March 15, 2002 Crown's Notice Letter, as it was duty-bound to do.

::ODMA\PCDOCS\BGD\19847\13

        **(b)**     **<u>Marsh Failed to Advise Crown on March 15, 2002 that it had</u>**
              **<u>Failed to Forward Crown's March 15, 2002 Notice of Claim.</u>**

192.   Marsh breached its fiduciary duties to Crown when it failed to <u>immediately</u> advise Crown that it had failed to forward Crown's notice letter on March 15, 2002, as it was duty-bound to do.

        **(c)**     **<u>Marsh Failed to Advise Crown on March 26, 2002, that the</u>**
              **<u>Representations Contained in AIG, NUF and AIGTS' March</u>**
              **<u>26, 2003 Letter Were False and Misleading.</u>**

193.   Marsh breached its fiduciary duties to Crown when it failed to advise Crown on March 26, 2003, when Marsh received AIG, NUF, and AIGTS' letter, that the assertions contained in that letter were false and misleading.

194.   Marsh's breach was ongoing until <u>at least</u> June 4, 2003 when, in light of AIG, NUF, and AIGTS' statement that notice to Marsh "does not constitute written notice to National Union," Marsh still failed to advise Crown that Marsh had failed to forward Crown's notice letter on March 15, 2002 as it was duty-bound to do.

195.   Marsh continues to breach its fiduciary duties to Crown by failing to advise Crown that Marsh did not forward Crown's Notice Letter on March 15, 2002, and by failing to advise Crown that AIG, NUF, and AIGTS' assertions in their March 26, 2003 Letter was false and misleading.

        **(d)**     **<u>Marsh Failed to Ensure that Crown's Endorsements Wre in</u>**
              **<u>Place.</u>**

196.   Although Crown had paid AIG and NUF the necessary premium in August 2001, and Crown made numerous efforts to obtain all endorsements, Marsh failed to secure

::ODMA\PCDOCS\BGD\19847\13

1   all the Fiduciary Policy endorsements for Crown and to ensure these endorsements were in

2   place.

3             **(e)**      **Marsh Withheld Policy Information from Crown.**

4        197.   Crown was denied access to a copy of the Policy and other information

5   necessary to pursue and enforce its rights against AIG.

6        198.   The information denied to Crown by Marsh included the Fiduciary Policy, the

7   Fiduciary Policy endorsements, the Notice of Claim Forms, and correspondence between and

8   among Marsh, AIG, NUF, and AIGTS, which included the May 22, 2002 letter showing that

9   AIG, NUF, and AIGTS were in possession of Crown's March 15, 2002 Letter by no later

10  than May 22, 2002.

11

12       199.   The Liquidating Trust was the successor-in-interest to and, indeed, stood in the

13  shoes of Crown and thus held all rights Crown had under the policy.

14       200.   Marsh was fully aware that the Trustee was the successor in interest to Crown.

15       201.   Nevertheless, Marsh wrongfully required Crown's discharged officers and

16  directors to authorize any release of information to the Trustee.

17       202.   As of August 2003, despite repeated requests for information by the Trustee

18  and his counsel, Marsh continued to refuse to provide the policy information requested by

19  the Trustee.

20

21       203.   In an e-mail dated August 26, 2003, Cowan, on behalf of Marsh, wrote the

22  following to the Trustee:  "Given our duties to each of the insureds under the policy, we

23  believe it would be prudent for you to notify each of the insureds of any request for

24

25

FIRST AMENDED COMPLAINT
Case No.  3:07-cv-02308-MMC

::ODMA\PCDOCS\BGD\19847\13

1   information regarding the policy.  If there is no objection we can then produce the requested

2   information."

3       204.   Marsh's delay and refusal to release policy information to Plaintiff hindered

4   and frustrated Plaintiff's efforts to pursue and enforce its rights against AIG, and represented

5   a further breach of the contractual and fiduciary duties it owed Crown.

6       **8.    AIG and NUF's Denial of Plaintiff's Claim Caused Damages to
7       Plaintiff.**

8       205.   The filing of the PACE complaint initiated protracted litigation.

9       206.   The PACE litigation was decided in Crown's favor by the United States

10   Supreme Court on June 11, 2007.  (*See Beck v. Pace International Union*, 127 S. Ct. 2310

11   (2007)).

12       207.   As a direct result of AIG and NUF's refusal to cover Plaintiff against the Pace

13   Litigation, Plaintiff has incurred fees and costs in defending against the PACE litigation in

14   excess of $2,000,000.

15       208.   The Liquidating Trust at various times during the PACE lawsuit had no cash

16   and was unable to pay its counsel.

17

18       **9.    AIGTS' Misrepresentations and Intentionally Wrongful Handling
19       of Plaintiff's Claim Caused Damages to Plaintiff.**

20       209.   As described herein, AIGTS, in handling Plaintiff's Claim, made numerous,

21   knowing representations to Plaintiff, including representations concerning the date AIG/NUF

22   had received notice of Plaintiff's Claim.

23

24

25

FIRST AMENDED COMPLAINT
Case No.  3:07-cv-02308-MMC

::ODMA\PCDOCS\BGD\19847\13

210.   These misrepresentations damaged Plaintiff by giving AIG/NUF a purported basis to deny Plaintiff's Claim and by causing Plaintiff not to pursue legal action against AIG/NUF and/or Marsh during the period between March 26, 2003 and June 4, 2003.

211.   Also, in handling Plaintiff's Claim, AIGTS denied the Claim on grounds which it knew had no basis in law or fact and therefore directly caused all damages arising out of the denial of Plaintiff's claim.

### 10.   Marsh's Numerous Breaches of Duty Caused Damages to Plaintiff.

212.   Marsh's failure to immediately forward Plaintiff's Notice Letter to AIG/NUF on March 15, 2002 damaged Plaintiff by giving AIG/NUF a purported basis to deny Plaintiff's Claim.

213.   Marsh's refusal to provide a copy of the Fiduciary Policy, a Notice of Claim form, and the policy number of the Fiduciary Policy damaged Plaintiff by hindering Plaintiff's ability to file notice of the Claim on its own, rather than relying on Marsh, and by hindering Plaintiff in providing notice of the claim to Marsh prior to March 15, 2002.

214.   Marsh's withholding of documents and policy information as described herein and Marsh's concealment and misrepresentations regarding its failure to forward the Notice Letter to AIG/NUF in a timely manner damaged Plaintiff by causing Plaintiff to believe its notice had been timely filed and thereby preventing Plaintiff from pursuing legal remedies against Marsh, AIG, NUF, and AIGTS for the breaches described herein.

## V.   COUNTS.

### COUNT I
### (Breach of Written Contract as Against AIG)

215.   All paragraphs of this Complaint are incorporated into this Count.

33

::ODMA\PCDOCS\BGD\19847\13

216. AIG bound itself to a written contract with Plaintiff as evidenced by the Fiduciary Policy.

217. Under the Fiduciary Policy, AIG agreed, *inter alia*, to cover Crown's pension trustees for claims made against said trustees during the Policy Period.

218. Plaintiff complied with the terms of the Policy and paid all premiums due thereunder.

219. AIG is not excused from performance of its covenants under the Fiduciary Policy.

220. AIG breached its covenants under the Fiduciary Policy by, *inter alia*, refusing to cover Crown's pension trustees for claims made against them during the Policy Period.

221. AIG's breaches of the Fiduciary Policy directly and proximately caused damages to Plaintiff in excess of $2,000,000.

## **COUNT II**
### **(Breach of the Covenant of Good Faith and Fair Dealing as Against AIG)**

222. All paragraphs of this Complaint are incorporated into this Count.

223. The Fiduciary Policy, like all contracts, includes implied mutual covenants of good faith and fair dealing, whereby each party agrees to refrain from behavior that would inhibit any other party from enjoying the rights due to it under the Fiduciary Policy.

224. AIG breached its implied covenants under the Fiduciary Policy by, *inter alia*, intentionally or recklessly failing to issue a single-paragraph endorsement, and a copy of the Fiduciary Policy including said endorsement, to Plaintiff until at least June 4,2003, after Plaintiff had paid the premium for said endorsement.

34

225.   AIG further breached its implied covenants under the Fiduciary Policy by, *inter alia*, intentionally or recklessly failing to issue a coverage opinion for at least one year after it received notice of the Claim.

226.   AIG further breached its implied covenants under the Fiduciary Policy by, *inter alia*, intentionally declining coverage when it knew it was not excused from performance.

227.   AIG further breached its implied covenants under the Fiduciary Policy by concealing and misrepresenting facts pertaining to the date of Plaintiff's notice of its claim and the Fiduciary Policy's requirements with respect to notice.

228.   AIG's breaches of its implied covenants under the Policy directly and proximately damaged Plaintiff.

### COUNT III
**(Breach of Contract as Against NUF)**

229.   All paragraphs of this Complaint are incorporated into this Count.

230.   NUF bound itself to a contract with Plaintiff as evidenced by the Fiduciary Policy.

231.   Under the Fiduciary Policy, NUF agreed, *inter alia*, to cover Crown's pension trustees for claims made against said trustees during the Policy Period.

232.   Plaintiff complied with the terms of the Fiduciary Policy, and paid all premiums due thereunder.

233.   NUF is not excused from performance of its covenants under the Fiduciary Policy.

FIRST AMENDED COMPLAINT
Case No.  3:07-cv-02308-MMC

::ODMA\PCDOCS\BGD\19847\13

234.   NUF breached its covenants under the Fiduciary Policy by, *inter alia*, refusing to cover Crown's pension trustees for claims made against them during the Policy Period.

235.   NUF's breaches of the Fiduciary Policy directly and proximately caused damages to Plaintiff in excess of $2,000,000.

## COUNT IV
### (Breach of the Covenant of Good Faith and Fair Dealing as Against NUF)

236.   All paragraphs of this Complaint are incorporated into this Count.

237.   The Fiduciary Policy, like all contracts, includes implied mutual covenants of good faith and fair dealing, whereby each party agrees to refrain from behavior that would inhibit any other party from enjoying the rights due to it under the Policy.

238.   NUF breached its implied covenants under the Fiduciary Policy by, *inter alia*, intentionally or recklessly failing to issue a single-paragraph endorsement, and a copy of the Policy including said endorsement, to Plaintiff until at least June 4, 2003, after Plaintiff had paid the premium for said endorsement.

239.   NUF further breached its implied covenants under the Fiduciary Policy by, *inter alia*, intentionally or recklessly failing to issue a coverage opinion for at least one year after it received notice of the Claim.

240.   NUF further breached its implied covenants under the Fiduciary Policy by, *inter alia*, intentionally declining coverage when it was not excused from performance.

241.   NUF's breaches of its implied covenants under the Fiduciary Policy directly and proximately damaged Plaintiff.

FIRST AMENDED COMPLAINT
Case No.  3:07-cv-02308-MMC

::ODMA\PCDOCS\BGD\19847\13

## COUNT V
### (Breach of Contract as Against Marsh)

242.   All paragraphs of this Complaint are incorporated into this Count.

243.   In consideration for Plaintiff's purchasing policies through Marsh and for additional monetary consideration as described above (in amounts in excess of $30,000 per month in 1999 – 2000), Marsh agreed, *inter alia*, the following:

- To ensure that Crown's coverages were adequate and binding;

- To provide information about coverages that Crown had purchased or was considering purchasing;

- To advise Crown on insurance matters;

- To accept and timely file Crown's notices of claim under the Fiduciary Policy;

- To accept premiums for the Policies that Crown purchased;

- To secure policies and endorsements for Crown.

244.   Marsh breached its duties to Crown by, *inter alia*, failing and refusing to secure necessary endorsements and a copy of the updated Policy including said endorsement to Plaintiff at least through June 4, 2003, after Plaintiff had paid the premium for said endorsement.

245.   Marsh also breached its duties to Plaintiff by, *inter alia*, (i) failing and refusing to timely file Crown's notice of claim with AIG and NUF when Plaintiff submitted its notice of claim to Marsh on March 15, 2002, (ii) remaining silent on or about March 15, 2002 and not advising Crown it had failed to file the March 15, 2002 Notice Letter, and (iii) by

::ODMA\PCDOCS\BGD\19847\13

remaining silent from and after March 26, 2003, when Marsh knew that it had failed to deliver the Notice Letter to AIG/NUF on March 15, 2002.

246.   Marsh's breach of duties directly and proximately damaged Plaintiff in an amount to be proven at trial or on motion.

## COUNT VI
**(Breach of Fiduciary Duty as Against Marsh)**

247.   All paragraphs of this Complaint are incorporated into this Count.

248.   Crown reposed trust and confidence in Marsh based on Marsh's expertise and representations regarding its expertise in commercial insurance matters.

249.   Marsh assumed fiduciary duties with respect to Crown by, *inter alia*, the following, all as set forth more fully herein:

- Assuming a position of superior knowledge and skill with respect to Crown;

- Allowing and encouraging Crown to repose trust and confidence in Marsh;

- Advising on and selecting appropriate insurance coverages for Crown; and

- Agreeing to timely file notices of claim "on [Plaintiff's] behalf;"

- Agreeing to accept premiums for the Policies that plaintiff purchased;

- Agreeing to service and promptly provide Policies and endorsements for Crown.

250.   Marsh breached its fiduciary duties to Plaintiff by, *inter alia*, failing to timely file Crown's notice of claim with AIG and NUF on March 15, 2002, when Crown had timely submitted the notice of claim to Marsh.

251.    Marsh breached its fiduciary duties to Plaintiff by, *inter alia*, failing to secure a necessary endorsement and a copy of the updated Fiduciary Policy including said endorsement to Plaintiff at least June 4, 2003, after Plaintiff had paid the premium for said endorsement.

252.    March breached its fiduciary duties to Crown when it failed to immediately advise Crown that it had failed to forward Crown's notice letter on March 15, 2002.

253.    Marsh breached its fiduciary duties to Crown when it failed to advise Crown on March 26, 2003, when Marsh received the March 26, 2003 Letter, that Marsh had failed to timely forward Crown's March 15, 2002 Notice Letter.

254.    Marsh continues to breach its fiduciary duties by failing to advise Crown that it failed to forward, on March 15, 2002, Crown's March 15, 2002 Notice Letter.

255.    Marsh further breached its fiduciary duties to Plaintiff by withholding requested information Plaintiff was entitled to have, from Plaintiff when Plaintiff was attempting to pursue and enforce their rights against AIG and NUF under the Policy, as set forth more fully herein.

256.    Marsh's breach of fiduciary duties to Plaintiff directly and proximately damaged Plaintiff.

## COUNT VII
### (Aiding and Abetting Breach of Fiduciary Duty as Against AIG)

257.    All paragraphs of this Complaint are incorporated into this Count.

258.    Marsh owed fiduciary duties to Plaintiff as alleged herein.

259.    Marsh breached its fiduciary duties to Plaintiff as alleged herein.

FIRST AMENDED COMPLAINT
Case No.  3:07-cv-02308-MMC

::ODMA\PCDOCS\BGD\19847\13

1
2
3
4
5
6
7
8
9

260.   AIG knowingly and substantially encouraged, facilitated, aided, and abetted Marsh's breaches of fiduciary duties by, among other things, delaying the issuance of a necessary endorsement to Plaintiff's Fiduciary Policy and delaying its response to Plaintiff's Claim, all as further alleged herein.   Knowing that Marsh was in breach of its fiduciary duties by failing to timely forward the March 15, 2002 notice letter, and that Marsh had failed to advise Crown of its ongoing breach of fiduciary duties, AIG misrepresented the date it had received Crown's notice of claim from Marsh.   AIG knew these misrepresentations would be received and relied on by Crown, and Crown did rely on them.

10
11

261.   Marsh's breaches and AIG's aiding and abetting thereof directly and proximately harmed Plaintiff.

12
13

### COUNT VIII
### (Aiding and Abetting Breach of Fiduciary Duty as Against NUF)

14

262.   All paragraphs of this Complaint are incorporated into this Count.

15

263.   Marsh owed fiduciary duties to Plaintiff as alleged herein.

16

264.   Marsh breached its fiduciary duties to Plaintiff as alleged herein.

17
18
19
20
21
22
23

265.   NUF knowingly and substantially encouraged, facilitated, aided, and abetted Marsh's breaches of fiduciary duties by, among other things, delaying the issuance of a necessary endorsement to Plaintiff's Fiduciary Policy and delaying its response to Plaintiff's Claim, all as further alleged herein.   Knowing that Marsh was in breach of its fiduciary duties by failing to forward the March 15, 2002 notice letter, and that Marsh had failed to advise Crown of its ongoing breach of fiduciary duties, NUF misrepresented the date it had

24
25

FIRST AMENDED COMPLAINT
Case No.  3:07-cv-02308-MMC

::ODMA\PCDOCS\BGD\19847\13

1    received Crown's notice of claim from Marsh.  NUF knew these misrepresentations would

2    be received and relied on by Crown.

3         266.   Marsh's breaches and NUF's aiding and abetting thereof directly and

4    proximately harmed Plaintiff.

5                                    **COUNT IX**
6              **(Aiding and Abetting Breach of Fiduciary Duty as Against AIGTS)**

7         267.   All paragraphs of this Complaint are incorporated into this Count.

8         268.   Marsh owed fiduciary duties to Plaintiff as alleged herein.

9         269.   Marsh breached its fiduciary duties to Plaintiff as alleged herein.

10        270.   AIGTS knowingly and substantially encouraged, facilitated, aided, and abetted

11   Marsh's breaches of fiduciary duties by, among other things, delaying the issuance of a

12   necessary endorsement to Plaintiff's Fiduciary Policy and delaying its response to Plaintiff's

13   Claim, all as further alleged herein.  Knowing that Marsh was in breach of its fiduciary

14   duties by failing to forward the March 15, 2002 notice letter, and that Marsh had failed to

15   advise Crown of its ongoing breach of fiduciary duties, AIGTS misrepresented the date it

16   had received Crown's notice of claim from Marsh.  AIGTS knew these misrepresentations

17   would be received and relied on by Crown.

18        271.   Marsh's breaches and AIGTS' aiding and abetting thereof directly and

19   proximately harmed Plaintiff.

20   **VI.   JURY DEMAND.**

21        272.   Plaintiff demands a trial by jury on all counts so triable.

22   **VII.   PRAYER FOR RELIEF.**

23        273.   WHEREFORE, Plaintiff prays for judgment as follows:

24                                        41

25

::ODMA\PCDOCS\BGD\19847\13

274.   For actual damages in an amount to be proven at trial or on motion;

275.   For pre- and post-judgment interest as allowed by law;

276.   For punitive damages in an amount to be proven at trial;

277.   For attorneys' fees, costs, and expenses of litigation as allowed by law;

278.   For such further and additional relief as this Court may deem proper.

DATED this 17th day of December 2007.

**BEUS GILBERT PLLC**


By_____s/Albert Morrison_____
　　　　　　Timothy J. Paris/(*pro hac vice*)
　　　　　　Albert J. Morrison/Calif. Bar No. 198047
　　　　　　4800 North Scottsdale Road, Suite 6000
　　　　　　Scottsdale, Arizona  85251-7616

FIRST AMENDED COMPLAINT
Case No.  3:07-cv-02308-MMC

::ODMA\PCDOCS\BGD\19847\13

1

**CERTIFICATE OF SERVICE**

2

Plaintiff Crown Paper Trust's First Amended Complaint was electronically filed on

3

December 17, 2007, with the Clerk of the United States District Court, Northern District of

4

California, San Francisco Division, for electronic service upon the parties below.  A copy of

5

this document was sent on December 18, 2007 to the Honorable Maxine M. Chesney by

6

overnight UPS.

7

8

Quinn Emanuel Urquhart Oliver & Hedges, LLP
Thad A. Davis, Esq.

9

Amanda Linn, Esq
865 South Figueroa Street, 10th Floor

10

Los Angeles, California  90017-2543
Telephone:  (213) 624-7707

11

Facsimile:  (213) 624-0643
thaddavis@quinnemanuel.com

12

13

*Attorneys for American International Group, Inc.;*
*National Union Fire Insurance Company of Pittsburgh, Pa.; and*

14

*AIG Domestic Claims, Inc.*

15

Bingham McCutchen LLP

16

Robert A. Lewis
Elizabeth Kennedy

17

Three Embarcadero Center
San Francisco, California  94111-4067

18

Telephone:  (415) 393-2000
Facsimile:  (415) 393-2286

19

20

*Attorneys for Marsh Risk & Insurance Services USA Inc.*
*and Marsh & McLennan Companies, Inc.*

21

22

          *s/ Albert Morrison*
_____

23

24

25

43

FIRST AMENDED COMPLAINT
Case No.  3:07-cv-02308-MMC

::ODMA\PCDOCS\BGD\19847\13